UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDEPENDENT FINANCIAL GROUP, LLC,<br><br>Plaintiff,<br><br>v.<br><br>QUEST TRUST COMPANY,<br><br>Defendant. | Case No. 3:21-cv-00537-WHO<br><br>**ORDER GRANTING MOTION TO TRANSFER**<br><br>Re: Dkt. No. 18 |

Defendant Quest Trust Company ("Quest") moves to transfer this case to the Southern District of Texas because of forum selection clauses that govern some of the claims asserted against it by plaintiff Independent Financial Group ("IFG"). IFG was assigned claims by the holders of various individual retirement accounts ("IRAs") that were allegedly used in a Ponzi scheme. The holders of those accounts, the agreements for which included forum selection clauses designating Harris County, Texas as the location to file any lawsuit, sued IFG for its alleged role in the scheme; as part of a settlement, they then assigned IFG their rights. IFG is asserting those claims against Quest along with claims that it was directly harmed by Quest's conduct. Because most of the assigned claims are governed by valid and enforceable forum selection clauses, and the remaining claims are inextricably intertwined with the covered claims, I will GRANT the motion to transfer.

## BACKGROUND

Quest is incorporated in the state of Texas and operates its self-directed IRA custody business in Houston. Complaint ("Compl.") [Dkt. No. 1 at 6–17] ¶ 2. IFG is a wholly owned subsidiary of IFG, Inc., which is incorporated in California. Dkt. No. 12.

On or around late July 2016, David Marshall, a former representative of IFG, sold his book

of business to Perry Santillo Jr. Compl. ¶¶ 9–10. IFG alleges that Santillo persuaded the newly acquired IFG clients to purchase sham investments in furtherance of a Ponzi scheme. *Id.* ¶¶ 11–12. Many of these clients maintained self-directed IRAs, which require investments to be in the custody of a third party. *Id.* ¶ 17. IFG alleges that Santillo recommended that clients entrust the custody of their IRA investments to Quest in the form of unsecured promissory notes. *Id.*

On June 20, 2018, the Securities and Exchange Commission filed a complaint alleging that Santillo "defrauded over 600 investors of close to $102 million." *Id.* ¶ 12. Each one of Marshall's former clients who became Santillo's clients and opened an account with Quest has sued IFG to recover their funds that were lost to Santillo's alleged Ponzi scheme. *Id.* ¶ 16. IFG asserts that it was compelled to settle with its clients, *id.* ¶ 19, despite never having custody of the allegedly fraudulent investments, *id.* ¶ 16. The settlement agreements include the assignment of any individual claims against Quest to IFG. *Id.* ¶ 20.

Twelve out of the fifteen IFG clients who pursued Quest's custodial services entered into contractual agreements that included forum selection clauses. Those clauses provide, "Any lawsuit filed against or by Custodian shall only be instituted in the district or county courts of Harris County, Texas where Custodian maintains its principal office, and Depositor agrees to submit to such jurisdiction both in connection with any such lawsuit which Depositor may file and in connection with any lawsuit which Custodian may file against Depositor." Dkt. No. 18-1 at 150. Quest allegedly charged a minimum annual fee of $500 for its custodial services. Compl. ¶ 17. IFG alleges that Quest failed to conduct due diligence on the issuing companies of the custodied assets and that this failure amounts to Quest's abetting a fraudulent Ponzi scheme. *Id.* ¶ 19. Additionally, IFG claims to have no knowledge of the state of its former clients' funds once the funds were transferred to Quest. *Id.* ¶ 18.

IFG brings claims of direct injury as well as assigned claims from its settlement agreements. *Id*. ¶ 20. For the assigned claims, IFG contends that Quest was negligent in failing to conduct due diligence on the investments under its custody and that Quest's conduct constituted a breach of an implied covenant of good faith and fair dealing. *Id*. ¶¶ 34–38, 45–50. IFG's direct claims assert that IFG was forced to pay damages to its clients who were harmed by Quest's

allegedly negligent investment custody and Santillo's alleged Ponzi scheme. *Id*. ¶¶ 21–33. All of IFG's claims, whether direct or assigned, trace back to Quest's custody of IFG's clients' investments.

On October 9, 2020, IFG filed suit against Quest in the Superior Court of the State of California for the County of Monterey. It pursues both claims of direct injury as well as the assigned claims from its settlement agreements on behalf of fifteen clients and asserts six claims for relief: (1) equitable indemnity, (2) equitable contribution, (3) tort of another, (4) negligence, (5) declaratory relief, and (6) breach of the covenant of good faith and fair dealing. Compl. ¶¶ 20–50. Quest removed the case to this court under diversity jurisdiction and now moves to transfer all claims to the Southern District of Texas or, in the alternative, to dismiss. Motion to Transfer Case ("Mot.") [Dkt. No. 18].

## LEGAL STANDARD

The general federal venue statute provides that "[a] civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

A party moving to transfer venue may do so under either 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406, depending on whether the initial venue is proper. If the initial venue is proper, the moving party seeks a discretionary transfer under Section 1404(a), which provides that a district court may transfer the case to any other district in which the case could have been originally filed "[f]or the convenience of parties and witnesses" or "in the interest of justice." If the initial venue is improper, the moving party seeks a mandatory transfer under Section 1406, which provides that a district court "shall dismiss, or if it be in the interest of justice, transfer the case to any district or division in which it could have been brought."

Under Section 1404(a), courts generally balance a number of factors, including,

(1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

*Martinez v. BMW of N. Am., LLC*, No. 3:19-CV-05479-WHO, 2019 WL 6727837, at *2 (N.D. Cal. Dec. 11, 2019) (quoting *Barnes & Noble v. LSI Corp.*, 823 F. Supp. 2d 980, 993 (N.D. Cal. 2011); *see also Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). "The party moving for transfer of a case bears the burden of demonstrating transfer is appropriate." *Saunders v. USAA Life Ins. Co.*, 71 F. Supp. 3d 1058, 1060 (N.D. Cal. 2014).

## DISCUSSION

As explained, there are two categories of claims: the claims governed by forum selection clauses and the ones that are not. I address each in turn.

## I. CLAIMS GOVERNED BY FORUM SELECTION CLAUSES

Ordinarily, a district court considering a Section 1404(a) motion would balance the factors discussed above. In this case, however, most of the assigned claims are governed by forum selection clauses, which changes the analysis.[1]

The Supreme Court has held that "Section 1404(a) . . . provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 59 (2013). It has instructed that "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Id.* at 62. Denying transfer of claims like this would require "extraordinary circumstances unrelated to the convenience of the parties." *Id.*

The Court has held that the presence of a forum selection clause changes the test in three ways. *Id.* at 63. First, the Court accords "no weight" to the plaintiff's choice of forum. *Id.* at 64. Through the plaintiff's consent to the forum selection clause prior to any dispute, the plaintiff has

---

[1] Although Quest's motion is captioned as a motion to transfer under both Sections 1404(a) and 1406, virtually the entire motion focuses on Section 1404(a). While there is a brief reference to Section 1406 in its argument, the Supreme Court has made clear that the presence of a forum selection clause does not make venue improper for purposes of Section 1406. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013).

4

already exercised its "venue privilege"—the ability to select the most advantageous forum. *Id.* at 63. Second, the Court does not consider the parties' private interests. *Id.* at 64. The plaintiff's consent to the forum selection clause effectively "waives the right to challenge the preselected forum as inconvenient," *id.* at 64, and "all private interests, as expressed in the forum-selection clause, weigh in favor of the transfer," *id.* at 67. Inconvenience to the plaintiff, the Court has said, was generally foreseeable when entering into the contract. *Id.* at 64. Third, the transfer of venue "will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.* at 64. Although normally defendants should not be encouraged to invoke Section 1404(a) purely to "gain the benefits of the laws of another jurisdiction," *Van Dusen v. Barrack*, 376 U.S. 612, 638 (1964), policy considerations of predictability and freedom of contract require that "the court in the contractually selected venue should not apply the law of the transferor venue to which the parties waived their right." *Atl. Marine*, 571 U.S. at 65–66. And although the Court did not describe its holding as a change to the general venue analysis, it also held that the burden is on the party violating the forum selection clause to show that the claim should not be transferred. *Id.* at 67.

**A. Enforceability of Forum Selection Clause**

The threshold question is whether the forum selection clause in the contract between IFG's clients and Quest is valid and enforceable. Federal law governs the enforcement of forum selection clauses in diversity cases. *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). Forum selection clauses are presumptively valid and should generally be upheld out of respect for the original expectations agreed upon by two competent parties. *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 280 (9th Cir. 1984); *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 11 (1972) ("The choice of that forum was made in an arm's-length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts").

Under federal law, a forum selection clause can be unenforceable for three reasons:

(1) if the inclusion of the clause in the agreement was the product of fraud or overreaching;

5

(2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and (3) if enforcement would contravene a strong public policy of the forum in which suit is brought.

*Petersen v. Boeing Co.*, 715 F.3d 276, 280 (9th Cir. 2013) (internal quotation marks and citations omitted). The burden rests with the party seeking to escape the forum selection clause to show that an exception to enforcement applies. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004). That burden has not been met here.

### i. Fraud or Overreaching

IFG argues that the forum selection clause is invalid due to fraud or overreaching. Opposition to the Mot. ("Oppo.") [Dkt. No. 23] 12–13. A forum selection clause is fraudulently obtained when "the inclusion of that clause in the contract was the product of fraud or coercion." *Richards v. Lloyd's of London*, 135 F.3d 1289, 1297 (9th Cir. 1998) (internal citations and quotations omitted); *Peterson*, 715 F.3d at 282. In *Peterson*, for instance, the court found fraud because an employee plaintiff signed an initial contract without any forum selection clause, but was later required to sign a new contract containing a forum selection clause without opportunity to read the new terms and under threat of ejection from the country of employment at his own expense. *Peterson*, 715 F.3d at 282–83. On the other hand, mere conclusory allegations of fraud are insufficient to invalidate a forum selection clause. *Spradlin v. Lear Siegler Management Services Company, Inc.*, 926 F.2d 865, 868 (9th Cir. 1991).

IFG claims that "the forum selection clause . . . was imposed on the claimants through fraud and overreaching," relying on the allegation that Quest or Santillo procured the investors' contractual consent by fraudulent representations about the alleged Ponzi scheme. Oppo. 12–13. IFG's argument misses the mark: it is well-established that the addition of the forum selection clause *itself* must have been fraudulent. *Richards*, 135 F.3d at 1289.

Not surprisingly, other cases have rejected positions nearly identical to IFG's. *See Storm v. Witt Biomedical Corp.*, No. C-95-3718 SI, 1996 WL 53624, at *4 (N.D. Cal. Jan. 23, 1996) ("None of plaintiff's allegations of overreaching goes specifically to the forum selection clause as is required under *Carnival* [*Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)]."); *Brown v. Artec Glob. Media, Inc.*, 2017 WL 11596885, at *4 (S.D. Cal. July 5, 2017) (rejecting fraud

6

1 argument when plaintiff alleged that forum selection clause was included in contract that was part of larger fraudulent scheme but failed to identify the specific clause as a result of fraud). IFG fails to satisfy its burden of establishing that the forum selection clause itself was procured by fraud.

### ii. Deprivation of Day in Court

IFG next contends that the clause should not be enforced because doing so would "be so gravely difficult and inconvenient that [the party seeking to escape the clause] will for all practical purposes be deprived of his day in court." *Bremen*, 407 U.S. at 18; Oppo. 13. It argues that "transfer to the Southern District of Texas would force claims asserted by non-clients who are not subject to Quest's forum selection clause to litigate claims halfway across the country." Oppo. 10. It also contends that "all the witnesses pertinent to those claims, including the assignor investors, are located in California" and would not be subject to trial subpoena jurisdiction in Texas. *Id.* 13.

Neither mere inconvenience nor general expense is a sufficient reason for refusing to honor a forum selection clause. *Pelleport*, 741 F.2d at 281 (upholding forum selection clause based on finding that inconveniencing plaintiff's witnesses to travel from Pennsylvania to California for trial would not "den[y] a meaningful day in court"); *Spradlin*, 926 F.2d at 869 (enforcing forum selection clause requiring litigation in Saudi Arabia despite general allegations of inconvenience and expense). Permitting a party to escape a binding forum selection clause based on a routine showing of inconvenience would effectively nullify the purpose of including such provisions in the first place. *See Paster v. Putney Student Travel, Inc.*, 1999 WL 1074120, at *3 (C.D. Cal. June 9, 1999) (finding that the expense of litigating out-of-state could not satisfy the inconvenience exception to routine enforcement of forum selection clauses).

Litigating claims in Texas imposes no greater inconvenience and expense than the burdens approved in *Pelleport* or *Spradlin*. And out-of-state discovery and witnesses are a fixture of modern litigation for which the Federal Rules of Civil Procedure make provision. *See* Fed. R. Civ. P. 45(c). Like the arguments in *Pelleport* and *Spradlin*, IFG's general allegations of the inconvenience of litigating elsewhere do not warrant recognizing an exception to enforcement of the forum selection clause.

**B. Transfer of These Claims is Warranted**

Because the forum selection clause is enforceable here, IFG would need to show some extraordinary circumstance that focused on the public-interest factors. *Atl. Marine*, 571 U.S. at 65–66. It has not done so. Its only argument is that because *other* claims are not covered, these claims should rise or fall with them. It offers no authority for that view, which would contradict the precedent requiring that valid, enforceable forum selection clauses be honored. Accordingly, the claims governed by those clauses must be transferred.

## II. CLAIMS NOT GOVERNED BY FORUM SELECTION CLAUSES

The next question is whether IFG's direct claims and three assigned claims[2] that are not covered by the forum selection clauses should also be transferred to the Southern District of Texas. Quest argues that, if the claims already discussed are transferred to Texas, the remaining claims must follow them in the interests of efficiency and avoidance of inconsistent rulings by different courts. Mot. 16–17. IFG contends that these claims should remain here to honor its choice of forum and because it is more convenient. Oppo. 7–11.

Each party relies on cases that have taken the approach it urges: some have transferred all claims, and some have split the case and transferred only the claims actually governed by forum selection clauses. On one side, the Second Circuit has held that the "twin commitments to upholding forum selection clauses where these are found to apply and deferring to a plaintiff's proper choice of forum" required it to dismiss the claims governed by forum selection clauses but not the ones that were not. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 393 (2d Cir. 2007); *accord Scrum All., Inc. v. Scrum, Inc.*, 2021 WL 798310, at *5 (E.D. Tex. Feb. 26, 2021), order clarified, 2021 WL 1845154 (E.D. Tex. May 7, 2021); *Del Aguila v. Genentech-Roche Transitional Benefit Plan*, 2015 WL 2089636, at *2 (N.D. Cal. May 4, 2015). There, the forum selection clause applied to breach of a recording contract but did not apply to federal copyright infringement claims because they arose from statute or to state law unfair competition and unjust enrichment

---

[2] At the hearing, Quest's counsel indicated that these three assigned claims are likely governed by forum selection clauses too, but that the contracts for them have not been located. Because it is Quest's burden to show the existence of a forum selection clause, I treat the claims as not being covered by any such clause.

8

claims, which it thought were likely preempted by the Copyright Act. *Phillips*, 494 F.3d at 387. On the other side, courts have treated all claims as one for these purposes, reasoning that the claims were "inextricably intertwined" and splitting them would mean that "two factfinders may be asked to make overlapping factual determinations, and parties and witnesses may be required to travel between the two Districts." *Brown*, 2017 WL 11596885, at *6.

But despite the parties' absolutist interpretations, an examination of the claims at issue in these cases shows that courts have, essentially, used a unified approach governed by the same interest-balancing that undergirds venue considerations generally. In practice, the cases cited by the parties show that courts essentially ask whether the claims are so intertwined as to overcome the plaintiff's choice of forum or sufficiently separable as to justify the burdens caused by piecemeal litigation. That approach makes sense: the ultimate goal is that a determination about transfer serves "the convenience of the parties and witnesses" and the "interest[s] of justice." 28 U.S.C. § 1404(a); *cf. Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 639 (9th Cir. 1988) (internal quotation marks omitted) ("Weighing of factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge.").

Here, the claims are inextricably intertwined, justifying transfer of the entire action. The claims all spring from the same fundamental facts, would require litigation of the same essential questions, and would threaten to create inconsistent rulings if litigated in multiple forums. The assigned claims not governed by forum selection clauses are, except for the identity of the original assignor, *identical* to the claims being transferred. They will require resolution of the same legal and factual issues. Many, if not all, of the witnesses will be the same. The direct claims are not precisely legally identical but will focus on most if not all of the same operative facts and will require resolution of overlapping factual and legal disputes settled by overlapping witnesses. The direct claims are for indemnification or contribution. They are, accordingly, derived from the same facts as the substantive negligence and breach claims. *See* Compl. ¶¶ 21–27. Indeed, because the plaintiff and defendant are the same (despite the different initial contracting party), if the claims were litigated in multiple courts, each court's decisions on various dispositive issues would likely have preclusive effects on the other court. *See Taylor v. Sturgell*, 553 U.S. 880, 892

9

(2008) (laying out principles of res judicata).[3]

IFG responds that the private and public interest factors favor keeping the case here. Oppo. 7–10. Its argument fails to take into consideration that some claims must be transferred under the forum selection clauses. It proceeds as if this were a normal venue analysis without those claims. That error infects each of its specific arguments.

IFG's public-interest argument is that (1) neither district is better than the other in terms of congestion and speed and (2) that the claims not covered by the forum selection clause should remain in this district because the direct claims arise under California law. Oppo. 10–11. The first half of the argument, though, does not militate one way or the other. The second, requiring a court to apply another forum's law, is not dispositive. *See Atl. Marine*, 571 U.S. at 67 ("[F]ederal judges routinely apply the law of a State other than the State in which they sit."); *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 398 (S.D.N.Y. 2014) ("The forum's familiarity with the governing law is typically to be accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the substantive law of other states.") (internal citations and quotations omitted). Here, moreover, the transferee court would already have to become familiar with the substantive law when resolving the other claims.

On the private-interest factors, IFG argues that all relevant witnesses will be in California. Oppo. 9–10. Were there no claims already transferred under the forum selection clause, this factor would be significant. But many, if not most, of the witnesses will have to testify in Texas due to the transferred claims, mitigating any inconvenience. None of IFG's cases that denied transfer on this basis dealt with other claims governed by a forum selection clause. *Id.* (collecting cases). The only other private factor that IFG points to is that it is headquartered in this District. *Id.* That reality, however, does not shift the scales in its favor because it alone cannot overcome the inefficiency and potentially inconsistent decisions that would arise from splitting such similar,

---

[3] At the hearing, IFG argued that the assigned claims would have pre-assignment evidence that the direct claims lacked. Even if that were true—it seems somewhat unlikely that it is more than de minimis given the derivative nature of the claims and counsel could not point to anything concrete—it would not change the outcome because the question is not whether the evidence is *identical*, it is whether the claims so overlap as to justify transfer.

10

related claims.

Accordingly, because the covered and noncovered claims are so intertwined, transfer is warranted. To the extent that a few private interest factors favor IFG, they do not overcome the strong considerations to the contrary.

## CONCLUSION

The motion to transfer is GRANTED.[4] This case shall be TRANSFERRED to the U.S. District Court for the Southern District of Texas.

**IT IS SO ORDERED.**

Dated: June 22, 2021

William H. Orrick
United States District Judge

---

[4] Quest asks that, if I deny its motion to transfer, I dismiss the Complaint in the alternative. Mot. 18. Because I grant its transfer motion, there is no need to consider this argument.